UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

UNITED STATES OF AMERICA,

                                            Docket No. 23 Cr. 316 (NRM)

   -against-

JINPING CHEN,

                     Defendant.

------------------------------------------------------------------------x


# JINPING CHEN'S SENTENCING MEMORANDUM


                                                        Counsel for JINPING CHEN

                                                        Susan Kellman

Hon. Nina R. Morrison
U.S. v. JinPing Chen
23 Cr. 316 (NRM)

## INTRODUCTION

JinPing Chen was arrested on April 23, 2023. He entered a guilty plea to a single count of conspiracy, pursuant to a plea agreement before this Honorable Court. Mr. Chen will appear before for sentencing on Friday, May 30, 2025, at 10:30 am.

Mr. Chen respectfully asks that your Honor accept counsel's representations that he fully and unconditionally accepts responsibility for his conduct. Nothing in this memorandum is intended to detract from the seriousness of his conduct, his earnest acceptance of responsibility for his actions or his unqualified remorse for the bad judgment that led him to the activities that resulted in his arrest and guilty plea. He accepts full responsibility for his conduct.

We respectfully request that the Court impose a sentence that does not require Mr. Chen to be incarcerated. Rather, we urge your Honor to consider a healthy term of supervision with a community service component. Such a sentence would be "sufficient but not greater than necessary" to satisfy the goals articulated in the federal sentencing paradigm.

## THE OFFENSE CONDUCT AS TO JIN PING CHEN

Mr. Chen entered a guilty plea to a single count of conspiring to act as a foreign agent for the People's Republic of China without notifying our government. To accomplish this, he held the position of Secretary General to a non-profit organization which listed its charitable mission as a "social gathering place for the Fujianese People." As the government has alleged, this organization conducted various operations on behalf of the

1

Chinese government. Though his official role on behalf of the Chinese government was quite limited, he was nonetheless required to register as a foreign agent.

## GUILTY PLEA/PSR/ GUIDELINE CALCULATION

The object of the conspiracy alleged in the indictment is keyed to 18 U.S.C. § 951, a felony for which no Guideline has been expressly promulgated. Because there is no sufficiently analogous Guideline, in its plea agreement, the United States Attorney's Office has explained that "the provisions of 18 U.S.C. § 3553 should control the imposition of an appropriate sentence in this case, pursuant to U.S.S.G. §§ 2X1.1 and 2X5.1.3."

## Criminal History:

Mr. Chen has no prior criminal history and accordingly, is placed in Criminal History Category I.

## SECTION 3553(a) FACTORS AND AN APPROPRIATE SENTENCE

A sentencing Court, is free to fashion a reasonable sentence that it deems appropriate based upon all of the sentencing factors set forth in § 3553(a), whose factors include, among other things:

   a. the nature and circumstances of the offense and the history
   and characteristics of the defendant; [and]

   b. the need for the sentence imposed:

      (A) to reflect the seriousness of the offense, to promote respect for the law, and to         provide just punishment for the offense;

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant;

2

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . [and]

    (E) to avoid unwarranted sentence disparities . . .

Mr. Chen respectfully submits that the §3553(a) factors in this case weigh heavily in favor of a sentence that does not require a term of incarceration. Specifically, Mr. Chen hopes that once the Court has had an opportunity to weigh all of the §3553(a) factors, your Honor will consider imposing a sentence that does not require a term of incarceration. It is respectfully submitted that such a sentence, combined with a term of supervision and community service, would be "sufficient, but not greater than necessary" to comply with the purposes of the sentencing.

**The Nature and Circumstances of the Offense**

As your Honor can read in the PSR, while Mr. Chen is genuinely remorseful of the role that he played in connection with the charged offense, it cannot be said that he played a significant role in the entity that is at the center of these charges. (See ¶¶ 21, 22 & 27)

**History and Characteristics of Jin Ping Chen**

Mr. Chen immigrated to the United States in 1997 and we naturalized in 2004. (PSR ¶ 44). As such, he should not be susceptible to removal – though he could be kidnapped by individuals wearing black clothes and black Covid masks at any time – these days, one never knows.

Mr. Chen's personal and family history is thoroughly outlined in PSR ¶¶ 41-47, and will not be repeated here. Rather, counsel hopes to use this submission as an opportunity

3

to share with your Honor the thoughts and first-hand experience of people who have known Mr. Chen for a lifetime wanted to share. Universally, in his community, Mr. Chen is loved and respected.

In a series of letters, Mr. Chen's friends and family explain who JinPing Chen is to them, how he has affected their lives and why he is deserving of this Court's mercy.

In a letter from his son, William Chen, we learn that his father was a man determined to provide love and support to his two children, notwithstanding a multitude of challenges, which included not being able to speak the language of his new country and his struggles for employment and income to support his family. Will, who counsel has gotten to know quite well during the pendency of his Dad's proceedings writes:

> Adapting to life in a new country with little money and limited English was not easy for my father, but he never wavered in his commitment to our family. No matter how tough his days were, he always found time to help with schoolwork, offer encouragement, and care for my mother and grandparents. His sacrifices made it possible for both my sister and I to attend college, something he always dreamed of but never had the chance to experience.

Counsel has met with JinPing Chen, on many occasions – but no matter the time – William was always at his father's side – able to juggle his work schedule with the need to support his Dad. On one occasion I tried to explain to William that between the interpreter and myself, his father was in good hands and that he could go to work that day, but William didn't miss a beat, responding, quite tellingly, that if the situation were reversed, he knew that his Dad would be right by his side.

Together with his wife, Mr. Chen has raised two amazing, hard-working children (now young adults). His son William, who grew up in Chinatown and went to Babson College, in Maine, and works in eCommerce. He asked counsel to include his letter in the package of letters being submitted to the Court to assist the Court in getting to know Mr. Chen. William explains that his Dad's relentless drive to provide for his family, always encouraged him. Will graduated from Babson College, with honors and with a degree in business and entrepreneurship. He writes:

> Adapting to life in a new country with little money and limited English was not easy for my father, but he never wavered in his commitment to our family. No matter how tough his days were, he always found time to help with schoolwork, offer encouragement, and care for my mother and grandparents.

Adding:

> Today, I have built a career in the eCommerce industry, and the values he instilled in me – hard work, integrity and perseverance – have been the foundation of my success.

William's letter is included in at Exhibit A.

Mr. Chen's daughter, Meng Meng Chen, "Amy", also asked to share her thoughts about her father. Amy explained that her father worked long hard days, running a restaurant that he was able to open after years of working 12-18 hour days for others in the restaurant business. Sundays, she explained, were different.

> Every Sunday, his only day off, my father volunteers at our church, preparing meals for the congregation and providing transportation for the elderly. He has always believed in giving back, even when he had little himself, and he has instilled those core values in my brother and me. Growing up, we witnessed him constantly helping others, whether it was offering rides,

5

> donating food, or just being there for people. He made sure we knew that it's the little acts of kindness that matter most, and that giving back isn't something that should only happen when you have plenty, but whenever you're able to help.

Amy's letter is included in Exhibit A.

Beyond the letters from his two children, many long-time friends asked for the opportunity to share their thoughts about their friend JinPing Chen. One such friend is Mr. Funing Zhou. Mr. Zhou was quite insistent about writing to your Honor. Having known Mr. Chen for decades, his letter seems to sum up assets that your Honor might find helpful to know about JinPing Chen before imposing sentence. Mr. Zhob writes:

> Throughout the years I have known Mr. Chen, he has consistently been a kind, sincere, and helpful person. He values family highly and is a respected husband and father. He is also a devout Christian who actively participates in volunteer work at his church, always treating others with kindness and faith. He has also served as the president of the Changle No. 1 High School Alumni Association in the United States, during which time he actively organized events, fostered alumni friendships, and helped those alumni in need. Under his leadership, the alumni association revitalized and became more cohesive, benefiting many people.
> He is humble, optimistic, diligent, and generous, always willing to give without expecting anything in return. He has always been a trustworthy and respected person among our classmates. It is with great regret that I see him in this difficult situation.

Funing Zhou's letter is included in Exhibit A.

In another letter, submitted by his long-time friend Mr. Henry Zheng, Mr. Zheng outlines some of Mr. Chen's community service, as the President of the First Middle School Alumni Association, writing:

> …he helped without salary or compensation economically disadvantaged students of the Association, with their education by making personal charitable donations to

6

> the Association…Mr. Chen also personally volunteered his own trim to help students strive to become good, productive, responsible and honorable citizens of this great country.

Mr. Zheng's letter is included in Exhibit A.

In a letter from an official at his church, Pastor Ellen Dong shares that Mr. Chen is an active volunteer at the church and that he volunteers his time on Sundays, in that he "serves in the kitchen and does catering jobs for the church."

Pastor Dong's letter is included in Exhibit A.

**JinPing Chen**

Mr. Chen has expressed remorse for his wrong doing. Though, as many have said, actions speak louder than words. A measure of Mr. Chen's sincerity best be exemplified by a particular action he took while on pretrial release – without consulting with counsel. One of the conditions of Mr. Chen's bail was to maintain a comfortable distance from the Chinese Embassy on the West Side of Manhattan. At the time of his arrest, Mr. Chen's family owned a sushi restaurant on 8th Avenue, in Manhattan. Worried, when it was pointed out to him that his restaurant was too close to the Chinese Embassy – without consulting with counsel, he sold his restaurant – to be sure that he was abiding by the conditions of his release.

Mr. Chen shared with counsel his view of his current situation as follows "what I have done, I have destroyed the stable life that I gifted to my family. Now, I find myself under constant stress." He evidences little concern for himself; rather, he worries about the hardships that his actions have visited on his family as a result of his conduct. Many

people make mistakes in their lives, and Mr. Chen acknowledged that he is no exception; that said, he has made it clear to counsel from Day 1 – that he deeply regrets what he did.

Mr Chen prays that your Honor will understand his circumstance and show him mercy.

**District Courts Have Tremendous Latitude in Determining an Appropriate Sentence**

In considering the weight to be afforded to the Sentencing Guidelines in a particular case, the Supreme Court has recognized that not all guidelines are equal – while some "exemplify the Commission's exercise of its characteristic institutional role," others do not. *Kimbrough,* 552 U.S. 85 at 109. (2007) Here, since the substantive offense, acting as an agent for a foreign government, pursuant to 18 U.S.C. 951, is a felony for which no specific Guideline has been promulgated; thus, except for U.S.S.G. 2X1.1, which is tied to a conspiracy offense, the Guidelines are of no concern. Accordingly, the Court has the authority to impose whatever sentence it deems appropriate under all of the circumstances.

In this case, Mr. Chen has demonstrated his ability to live a law-abiding life. He is described by all who know him as a hard-working man who has committed himself to providing for his family and his community.

Hon. Nina R. Morrison
U.S. v. Jinfang Chen
23 Cr. 316 (NRM)

## **A Non-Jail Sentence is Sufficient and Will Afford Adequate Deterrence to Criminal Conduct.**

There comes a point in a person's life when they see the distance traveled is greater than the distance ahead. Mr. Chen is an immigrant who hoped to experience the American dream. He worked hard all of his life. His only goal was to provide his family with a better and richer life than he had; and to support his community in any way he could. What he must admit now, is that he is a convicted felon – which sends a signal loud and clear for all that hear – that the path he chose was mistaken. This humiliation is worse than most any punishment that could be imposed by the law. That said, Mr. Chen poses no danger to the public and we hope that your Honor will understand the sincerity of the remorse that he feels.

Mr. Chen is now 61 years old. He has had no criminal record except for the instant offense. During the two years that he has been under Pre-trial services supervision, he has, of course, committed no additional criminal acts and has abided by all of the terms of his supervision. In fact, as mentioned above, Mr. Chen sold his restaurant because it was too close to the Chinese Embassy.

The United States Sentencing Commission published a report: The Effects of Aging on Recidivism Among Federal Offenders (USSG Dec. 2017), https://www.ussc.gov/sites/default/files/"https://www.ussc.gov/sites/default/files/ pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf). Not surprisingly, the Commission found that oldest offenders were the least

9

Hon. Nina R. Morrison
U.S. v. Jinliang Chen
23 Cr. 316 (NRM)

likely to be rearrested. <u>Id</u>. p.22   The Commission research found that the below 30 year old age group had the highest re-arrest rate (64.8%) and the rate declined with each subsequent age group until the oldest of the age groups studied, the plus 60 group (16.4 %). <u>Id</u>.  Furthermore, when broken down to primary offense types, the highest rates of recidivism were firearms at 79.3% for individuals younger than 30-years, and 30.2% for individuals over 60-years. Contrarily, fraud had the lowest rates of recidivism for primary offense types, with 53.6% recidivating for under 30-years of age, and 12.5% for plus individuals 60-years and above. <u>Id</u>. p.25.  With regard to Criminal History Category the trend is the same – the lower criminal history categories and the older group, the lowest rate of recidivism.  <u>Id</u>.  Mr. Chen has a Criminal History Category of I and fits into one of the lowest recidivism categories.  Thus, it is safe to infer, that statistically, the danger of Mr. Chen recidivating is quite low.

**<u>A Non-Jail Sentence is Sufficient in This Instance to Protect the Public From Further Crimes</u>**

Mr. Chen is embarrassed and ashamed of the decisions and the bad judgment that led him to act as he did.  That said, we respectfully submit that he poses no future danger to the public.

**<u>Conclusion</u>**

Mr. Chen stands before Your Honor, humiliated by his actions.  Except for his role in the instant offense, the fact that he had never committed a crime before this unfortunate incident, support the idea that the chances of recidivism are, practically speaking – zero. Mr. Chen has asked me to assure your Honor that he will never again be back in front of a

court facing criminal charges – or any violation of the terms of his supervision. Mr. Chen understands that what he did was, of course, wrong – and, while there is no excuse for his conduct, he prays that your Honor will recognize that a jail sentence here serves no useful purpose.

Accordingly, we humbly request that your Honor sentence Mr. Chen to a term supervision – a term that might include a healthy dose of community service – in which he could continue to do what he does best – which is to love and support his family and to help the people in his community who need support. Such a result would be sufficient but not greater than necessary to meet with goals of 18 U.S.C. §3553(a).

Your Honor's kind attention to this matter is greatly appreciated.

                            Respectfully Submitted,

                            *Susan Kellman*

                            Susan G. Kellman

cc: Alex Solomon
    Antoinette Rangel
    Asst. United States Attorneys

    JinPing Chen